DMJ:ALB
F.#2010R02118

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

FEB 11 2011

LONG ISLAND OFFICE

**11-0151M**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X

UNITED STATES OF AMERICA

    - against -

GILBERT SOLNIN,

           Defendant.

------------------------------X

FILED UNDER SEAL

AFFIDAVIT IN SUPPORT
OF AN ARREST WARRANT

(18 U.S.C. § 1341)

EASTERN DISTRICT OF NEW YORK, SS:

    Eric Oram, being duly sworn, deposes and says that he is a United States Postal Inspector with the United States Postal Inspection Service ("USPIS"), duly appointed according to law and acting as such.

    On about and between December 1, 2007 and February 11, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GILBERT SOLNIN did knowingly and intentionally devise a scheme and artifice to defraud and obtain money by means of false and fraudulent pretenses, representations and promises and, for the purpose of executing this scheme and artifice, did knowingly and intentionally place and cause to be placed in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the United States Postal Service and

private and commercial interstate carriers.

(Title 18, United States Code, Section 1341)

The basis for your deponent's information and the grounds for his belief are as follows:[1]

1. I have been employed as a Postal Inspector with the USPIS since August 2007 and I am currently assigned to the Queens/Long Island Multi-Functional Team. The Queens/Long Island Multi-Functional Team focuses on external crimes involving mail theft, identity fraud, bank fraud, mail fraud and wire fraud. This affidavit is based upon my personal involvement in the investigation of this matter, as well as the review of records, including numerous financial records, and conversations with other law enforcement agents and witnesses. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2. I have taken part in an investigation of a fraud scheme by which the defendant GILBERT SOLNIN has defrauded numerous marketing and advertising agencies located throughout the United States. Defendant SOLNIN, who resides in Plainview,

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware. Rather, it includes only sufficient facts to meet the showing of probable cause required at this stage of the proceedings.

Case 2:12-cr-00040-ADS   Document 1   Filed 02/11/11   Page 3 of 7 PageID #: 3

3

New York, and works out of his residence, holds himself out to be a manager or operator for various company ventures seeking advertising and marketing assistance. The evidence gathered thus far, as detailed below, has revealed that the scheme has resulted in approximately $400,000 in losses to the marketing and advertising agency victims.

3.  The scheme generally involves the defendant GILBERT SOLNIN contacting a representative of a marketing or advertising agency by e-mail, indicating that he has a "unique opportunity" whereby a new venture is being formed. In fact, SOLNIN has no agreements or contracts with the companies he claims to represent and/or work with. Soon thereafter, SOLNIN indicates that he needs a marketing and advertising agency to represent this venture. SOLNIN then solicits a monthly retainer from the marketing or advertising agency of $3,500 to $8,000 each month for two to three months, until the venture comes to pass and a contract can be entered into. After receiving monies, in person, by U.S. Mail, private and commercial interstate carriers and wire transfers, SOLNIN either ceases further communications and/or explains that accidents and/or illnesses have befallen him. The promised venture never in fact comes to pass.

Doe Agency #1

4.  For example, in or about September 2008, John Doe #1, an individual whose identity is known to me, the owner and

Chief Executive Office ("CEO") of Doe Agency #1, located outside the State of New York, was solicited by defendant GILBERT SOLNIN for a unique opportunity to become the marketing entity for a beverage venture group. During several discussions via telephone, email and in person, SOLNIN falsely stated to John Doe #1 that he had a contract with three beverage companies, Beverage Companies #1, #2 and #3 (the "beverage companies"). SOLNIN also falsely represented that he was coordinating with Private Equity Firm #1 to raise venture capital for this project. SOLNIN later signed an agreement with Doe Agency #1 which stated that SOLNIN was the United States Commercial Director of each of the beverage companies. SOLNIN represented that Doe Agency #1 would be the exclusive agency to represent the beverage companies' venture and that the deal would be closing in January 2009. Based on these false representations, SOLNIN solicited and received three separate payments of $8,000 from Doe Agency #1 between October 2008 and January 2009. Two of these payments were sent to SOLNIN by Doe Agency #1 via United States Mail to SOLNIN's Plainview residence.

5. On or about January 12, 2009, SOLNIN sent an e-mail to John Doe #1 claiming that he had been in a "bad car accident in Denver," lost his cell phone and was having dizzy spells. In a series of subsequent e-mails, between January and April 2009, SOLNIN claimed that the closing was delayed, and that

he had been diagnosed with Multiple Sclerosis following the accident. SOLNIN eventually ceased all communications with John Doe #1. The closing promised by SOLNIN never occurred.

### Doe Agency #2

6. Similarly, in or about April 2009, John Doe #2, an individual whose identity is known to me, the managing partner of Doe Agency #2, located outside the State of New York, was solicited by defendant GILBERT SOLNIN for a unique opportunity to become the marketing entity for a beverage venture group. During several discussions via telephone, email and in person, SOLNIN falsely explained to John Doe #2 that he had a contract with beverage companies. SOLNIN also falsely represented that he was coordinating with Private Equity Firm #1, whose identity is known to me, to raise venture capital for this project. SOLNIN later signed an agreement with Doe Agency #2 which falsely stated that SOLNIN was the United States Commercial Director of each of the beverage companies. SOLNIN also falsely represented that Doe Agency #2 would be the agency of record for the beverage companies' venture and that the deal would be closing in July 2009. Based on these false representations, SOLNIN received two separate payments of $5,000 from Doe Agency #2 between April and June 2009. One of these payments was sent to SOLNIN by Doe Agency #2 via private commercial interstate carrier to SOLNIN's Plainview residence.

7. On or about July 20, 2009, SOLNIN sent an e-mail to John Doe #2 claiming that he had been in a auto accident, that the accident had caused him to go to the doctor and that he had then been diagnosed with Multiple Sclerosis. SOLNIN also claimed there were unspecified problems with the beverage venture group. On or about July 21, 2009, John Doe #2 requested a refund of the $10,000 paid to SOLNIN. SOLNIN did not refund the $10,000, and the promised closing never occurred.

The Investigation of SOLNIN's False Representations

8. I have spoken with representatives of Beverage Company #1 and #2, who indicated that they were never part of a proposed beverage venture involving Beverage Companies #1, #2 and #3, and that defendant GILBERT SOLNIN was never authorized to represent them in any capacity. I have also spoken with a representative of Private Equity Firm #1 who indicated that Private Equity Firm #1 had never been involved in raising venture capital for any venture project involving SOLNIN.

9. During the time period that defendant GILBERT SOLNIN falsely represented to John Doe #1 and John Doe #2 that they had an exclusive contract for the promised beverage companies venture, I am aware that SOLNIN was also engaged in making similar false representations to and, as a result thereof,

7

received payments from other victim marketing and advertising agencies.

    WHEREFORE, I respectfully request that an arrest warrant be issued for defendant GILBERT SOLNIN so that he may be dealt with according to law.

    WHEREFORE, I respectfully request that this affidavit remain under seal until further order by the Court as defendant GILBERT SOLNIN has previously engaged in threatening behavior via e-mail towards victim marketing and advertising agencies upon discovery of his fraudulent scheme. Unless and until SOLNIN is in custody, disclosure of this affidavit may lead to additional such behavior.

_____
ERIC ORAM
United States Postal Inspector

Sworn to before me this
11th day of February, 2011

_____
WILLIAM D. WALL
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK