**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
UNITED STATES OF AMERICA,

            Plaintiff,

                                  **DECISION AND ORDER**

     -against-                       12-cr-040 (ADS)

GILBERT SOLNIN, also known as "Gil Solnin"
and "Gil Solomon,"

            Defendant.

--------------------------------------------------------X


<u>**APPEARANCES:**</u>

**United States Attorney for the Eastern District of New York**
*Attorneys for the Plaintiff*
610 Federal Plaza
Central Islip, NY 11722
       Assistant United States Attorney, Allen L. Bode

**Haley Weinblatt & Calcagni, LLP**
*Attorneys for the Defendant*
One Suffolk Square
1601 Veterans Memorial Highway, Suite 425
Islandia, NY 11749
       By:  Richard D. Haley, Jr., Esq., Of Counsel

**Terrence P. Buckley, Esq.**
*Attorney for the Defendant*
356 Veterans Memorial Highway, Suite 8N
Commack, NY 11725

**SPATT, District Judge**.

      Presently pending before the Court is a motion by the Defendant Gilbert Solnin (the

"Defendant") pursuant to 18 U.S.C. § 3162(a)(1) to dismiss with prejudice Counts One, Two,

Three, Four, Five, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen of the

Superseding Indictment due to the alleged failure of the Government to comply with the time

limit required by the Speedy Trial Act of 1974, 18 U.S.C. § 3161(b) and Federal Rule of Criminal Procedure 48(b)(1). The remaining counts of the Superseding Indictment, namely, Count Nine, Count Sixteen, Count Seventeen, Count Eighteen, and Count Nineteen are not subject to the instant motion.

On October 23, 2014, subsequent to the filing of the instant motion, a Second Superseding Indictment was returned against the Defendant, charging him with two additional counts of wire fraud and one count of making a false statement in violation of 18 U.S.C. §§ 1001(a)(2) and 3551 *et seq.*

With the Defendant's consent, the Court will treat the motion to dismiss the above-mentioned counts of the Superseding Indictments as directed to the corresponding counts of the Second Superseding Indictment. As the motion to dismiss does not address the specific charges brought for the first time in the Second Superseding Indictment, the Court assumes that they are not the subject to the instant motion.

The Defendant also seeks an order directing the Government to (1) supply a Bill of Particulars in the form of the identity of the "John Doe Agencies" and "John Doe Distilleries" referred to in the Superseding Indictment as well as a copy of the specific, check, e-mail, and/or wire transfer confirmation referred to in each of the individual counts of the Superseding Indictment; (2) provide information pursuant to Rule 404(b) of the Federal Rules of Evidence; (3) disclose information pursuant to Rule 807 of the Federal Rules of Evidence; and (4) provide information pursuant to Brady v. Maryland, 373 U.S. 83, 84, 83 S. Ct. 1194, 1195, 10 L. Ed. 2d 215 (1963); Giglio v. United States, 405 U.S. 150, 151, 92 S. Ct. 763, 764, 31 L. Ed. 2d 104 (1972); and United States v. Bagley, 473 U.S. 667, 669, 105 S. Ct. 3375, 3377, 87 L. Ed. 2d 481 (1985).

By way of background, on February 16, 2011, the Defendant, a resident of Plainview, New York, was arrested pursuant to a complaint, which charged him with one count of mail fraud occurring between December 1, 2007 and February 11, 2011. This count charged that the Defendant had defrauded two marketing and advertising agencies located outside of New York, Doe Agencies #1 and #2 by holding himself out to be a manager or operator for various ventures seeking advertising and marketing assistance. The alleged scheme involved the Defendant contacting a representative of the marketing or advertising agency about the formation of a new venture when, in fact, he had no agreements or contracts with the companies he claimed to represent and/or work with. Soon after, the Defendant would allegedly indicate that he needed the agency to represent the venture; solicit a monthly retainer of $3,500 to $8,000 for two to three months until the venture was to come to fruition and a contract could be entered; and accept monies, in person, by United States mail, private and commercial interstate carriers and wire transfers. However, the Defendant allegedly would then either cease further communications and/or explain that accidents and/or illnesses had befallen him and the promised ventures never, in fact, came to pass. The complaint specifically alleged mailings of payments by (1) Doe Agency #1 between October 2008 and January 2009 to the Defendant at his Plainview residence and (2) a payment sent by Doe Agency #2 between April and June 2009 via a private commercial interstate carrier to the Defendant at his Plainview residence.

On February 16, 2011, the Defendant appeared for arraignment before United States Magistrate Judge E. Thomas Boyle at which time he was released on a $25,000 secured bond. The Defendant waived his right to a preliminary hearing.

On March 21, 2011, the Defendant appeared before United States Magistrate Judge A. Kathleen Tomlinson and executed a request for an "Order of Excludable Delay," waiving speedy

indictment rights for the time period from March 15, 2011 to April 18, 2011 for the purpose of plea negotiations.

On April 13, 2011, Judge Boyle issued an "Order of Excludable Delay" for the time period from April 18, 2011 to May 19, 2011.

On May 13, 2011, the Defendant and then defense counsel Joseph Conway, Esq. allegedly signed and faxed to the Government a request, improperly dated May 16, 2011, for an "Order of Excludable Delay" for the time period from May 18, 2011 to June 17, 2011. In the Defendant's memorandum of law in support of the instant motion to dismiss, he denies signing this document. In the Defendant's affidavit submitted in support of the instant motion, the Defendant avers that "[t] to the best of my recollection, the Docket Entries accurately report the court proceedings from February 16, 2011 to January 27, 2012 as well the documents signed by me with respect to those court proceedings." (Docket Entry No. 71-2, at ¶3.)

According to the Government, it signed this faxed copy, made a copy to keep in its file, and sent the original copy to the United States Magistrate Judge on duty via interoffice mail. However, for an unexplained reason, the order was never docketed.

On June 16, 2011, the Defendant appeared before United States Magistrate Judge Arlene R. Lindsay at which time the Defendant's counsel indicated that the Defendant wished to waive certain speedy trial rights as he had "been having meetings with the Government" which were "making progress" and which would "hopefully lead to resolution" of the charges. (Minutes, at p. 2.) Judge Lindsay inquired of the Defendant who agreed to an additional 30 day wavier of speedy indictment rights. Judge Lindsay then issued an "Order of Excludable Delay" for the time period from June 16, 2011 to July 15, 2011.

On July 7, 2011, the Government provided a plea agreement proposal to the Defendant. On July 15, 2011, the parties met in person. However, at this meeting, the parties could not consummate an agreement and the plea negotiations fell through. The Government indicated at this meeting that it would pursue an indictment of the Defendant.

That same day, the Government moved to dismiss the complaint without prejudice. Judge Lindsay "So Ordered" the dismissal.

On January 12, 2012, a Grand Jury returned an Indictment charging the Defendant with eight counts of mail fraud and six counts of wire fraud. The Indictment included mail fraud counts as to Doe Agencies #1 and #2, as well as counts involving criminal offenses as to twelve additional victim agencies.

On January 27, 2012, the Defendant pleaded not guilty to the fourteen-count Indictment.

During additional plea negotiations, the Defendant waived his speedy trial rights from January 27, 2012 to December 13, 2013.

On November 19, 2013, another grand jury returned a Superseding Indictment charging the Defendant with one additional count of mail fraud and four additional counts of wire fraud. The additional counts related to a second alleged scheme by the Defendant which targeted various beverage distilleries, in a manner similar to the scheme involving the agencies, by making false and fraudulent representations to the "John Doe Distilleries" about his ability to secure placement of their products through purported distributors located in New York State. The Defendant was accused of directing the "John Doe Distilleries" to send him advance commission fees in amounts ranging from $1,000 to $4,000 by U.S. mail, private commercial carriers, and electronic wire transfers. After the Defendant would receive the funds, he would

allegedly discontinue substantive communications with the "John Doe Distilleries" and did not place their products or refund advanced commission fees to them as promised.

On November 22, 2013, the Defendant was arraigned on the Superseding Indictment at which time he pleaded not guilty.

On March 27, 2014, the Defendant filed the instant motion.

On October 23, 2014, another grand jury returned a Second Superseding Indictment charging the Defendant with two additional counts of wire fraud and one count of making a false statement in violation of 18 U.S.C. §§ 1001(a)(2) and 3551 *et seq*.

On January 9, 2015, the Defendant agreed, on the record, to convert the motion to dismiss the above-mentioned counts of the Superseding Indictment to a motion to dismiss the corresponding counts of the Second Superseding Indictment.

## I. DISCUSSION

A.  The Speedy Trial Act Claim

The Speedy Trial Act, 18 U.S.C. § 3161, *et seq*. establishes time limits for the completion of various stages of a federal criminal prosecution.  Under the terms of the Act, subject to specified exclusions of time, the indictment must be filed within thirty days of the accused's arrest, and trial must begin within seventy days from the filing of the indictment. 18 U.S.C. §§ 3161(b), 3161(c)(1).  "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2).  The "[d]efendant bears the burden of proof supporting such a motion." United States v. Adams, 448 F.3d 492, 503 (2d Cir. 2006); United States v. Montecalvo, 861 F. Supp. 2d 110, 114 (E.D.N.Y. 2012).

In this case, the Defendant was arraigned on February 16, 2011. On March 22, 2011, an "Order of Excludable Delay" signed by the Defendant encompassing the time period from March 15, 2011 to April 18, 2011 was entered on the docket. At this point, 27 days of the Speedy Trial Act 30-day "indictment clock" had elapsed. On April 18, 2011, an "Order of Excludable Delay" signed by the Defendant for the time period from April 18, 2011 until May 19, 2011 was entered on the docket. With 3 days remaining on the 30 day "indictment clock," the Section 3161 period expired at midnight on May 22, 2011. Almost eight months then elapsed between May 22, 2011 and the filing of the original Indictment on January 12, 2012.

As detailed above, according to the Government, the Defendant signed an "Order of Excludable Delay" for the time period from May 18, 2011 to June 17, 2011. (Gov's Exh. 4.) The Government then allegedly forwarded via interoffice mail the original of that "Order of Excludable Delay" to the duty magistrate. However, for some reason, this order was not entered on the docket. Regardless, even on the Government's version of events, by failing to ensure that this "Order of Excludable Delay" was entered on the docket, it fell short of its responsibilities under the Speedy Trial Act. See generally United States v. Schlosser, No. 299CR406C, 2000 WL 33710859, at *3 (D. Utah May 5, 2000)(recounting procedural history case, including that the Defendant previously "filed a motion to dismiss claiming that the Speedy Trial Act was violated because the order denying the motion to suppress was not entered until after the statutory time to bring the defendant to trial had lapsed. The government agreed that the Speedy Trial Act had been violated, and on July 8, 1999, the court entered an order dismissing the indictment without prejudice.").

The Court takes note of a decision, albeit from outside this Circuit, of the United States District Court of District of New Jersey, United States v. Hall, No. 3:13-CR-00684 (FLW), 2014

WL 1744773 (D. N.J. May 1, 2014) the facts of which, if the Government's version of events is accurate, are on all fours with those here. There, the Government and the defense counsel orally agreed to exclude certain periods of time under the Speedy Trial Act in order to engage in plea bargaining. The Government prepared a written "Continuance Order," which was forwarded to the offices of the defense counsel. However, due to admitted inadvertence on the part of the Government, the "Continuance Order" was never entered by the Court. Under those circumstances, the Government conceded that a Speedy Trial Act violation had occurred.

Here, however, the Government – the same plaintiff as in Hall – declines to concede that a Speedy Trial Act violation has occurred, adopting this position in part on the basis that it bears no responsibility for the fact that the "Order of Excludable Delay" for the time period from May 18, 2011 to June 17, 2011 was not entered on the docket. In the Court's view, this argument is unavailing. First, the Hall court's conclusion that a Speedy Trial Act violation had occurred did not turn on its finding that the Government bore responsibility, admitted or not, for the delay. Rather, that court identified a violation of the Speedy Trial Act based on a straightforward calculation of the passage of unexcluded days between the filing of the criminal complaint and the indictment. Second, while "[t]he [C]ourt readily admits that it bears responsibility in ensuring the Speedy Trial clock is upheld . . . ultimately the onus is on the Government to prosecute cases." United States v. Perez, No. CRIM. 09-00025 (FMTG), 2011 WL 2294194, at *6 (D. Guam June 8, 2011).

Further, it is of no moment, for purposes of determining whether a Speedy Trial Act violation has occurred, that, on June 27, 2011, an "Order of Excludable Delay" for the time period from June 16, 2011 to July 15, 2011 signed by the Defendant was entered on the docket. At that point, a Speedy Trial Act violation had already occurred.

Nor, contrary to the Government's contention, did the Defendant's failure to raise an objection based on Speedy Trial Act grounds before Judge Lindsay – or, for that matter, until the filing of the instant motion – constitute a waiver of the Defendant's rights under the Act. Of relevance here, 18 U.S.C. § 3162(a)(2) provides, in pertinent part, that the "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." Compare United States v. Patten, 826 F.2d 198, 199 (2d Cir. 1987)(per curiam)(finding Speedy Trial Act argument waived under § 3162(a)(2)). By the statute's terms, the waiver of a Speedy Trial Act violation is limited to situations, unlike here, where a defendant fails to move to dismiss on that basis "prior to trial or entry of a plea of guilty or nolo contendere." Here, the Defendant seeks dismissal of various counts of the Second Superseding Indictment by way of a pre-trial motion. Therefore, not only has the Defendant not waived his right to dismissal under the Speedy Trial Act, the Court finds that the instant motion is timely.

Having determined that a Speedy Trial Act violation has occurred, some type of dismissal remedy is warranted. The question then becomes (1) the scope of this dismissal in terms of the relevant counts of the Second Superseding Indictment and (2) whether such dismissal should be with or without prejudice.

With regard to the first question, the Government argues that because the initial complaint charged the Defendant with mail fraud as to only two victims – now reflected in the Second Superseding Indictment as Counts Four and Seven – a broader dismissal as sought by the Defendant is inappropriate. The Court agrees.

As noted above, pursuant to section 3161(b) of the Speedy Trial Act, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within

9

thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). "However, section 3162(a)(1) of the Speedy Trial Act, which provides the appropriate sanctions for such violations and has limited application, states that 'such charge against that individual contained in *such complaint* shall be dismissed or otherwise dropped.'" Gomez v. United States, No. 09-CV-4368 (DLI), 2013 WL 1232342, at *4 (E.D.N.Y. Mar. 26, 2013).

Accordingly, "courts will not dismiss an untimely indictment pursuant to § 3162(a)(1) if it pleads different charges from those in the complaint, and this applies even if the indictment charges 'arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint.'" United States v. Gaskin, 364 F.3d 438, 451 (2d Cir. 2004)(quoting United States v. Napolitano, 761 F.2d 135, 137 (2d Cir. 1985)), cert. denied, 544 U.S. 990, 125 S. Ct. 1878, 161 L. Ed. 2d 751 (2005). In other words, "it is [] well-settled that a superseding indictment issued more than thirty days after a defendant's arrest and adding a new charge to those contained in the complaint and original indictment does not violate the Speedy Trial Act. Such a charge does not inherit the original complaint's thirty-day clock but rather starts its own, new clock." United States v. Deas, 596 F. Supp. 2d 319, 323 (D. Conn. 2009)(citing United States v. Glover, No. 3:08–cr–4 (JCH), 2008 WL 4696120, *4 (D. Conn. Oct. 21, 2008); see also Napolitano, 761 F.2d at 137 (only specific charges contained in the criminal complaint are subject to dismissal if brought in an untimely indictment); United States v. Cortinas, 785 F. Supp. 357, 362 (E.D.N.Y. 1992).

In this case, although the complaint charged the Defendant with mail fraud as to two victims, the Indictment charged the Defendant with two counts based on that conduct – now reflected in Counts Four and Seven of the Second Superseding Indictment – plus additional

counts of mail fraud and six counts of wire fraud.  Because these additional criminal offenses were not formally charged until the Indictment itself was handed down, the Speedy Trial Act clock did not begin to run as to those charges until the Indictment was filed.  See United States v. Patterson, 135 F. App'x 469, 474 (2d Cir. 2005).  Accordingly, the dismissal of the Second Superseding Indictment due to the above-mentioned violation of the Speedy Trial Act is limited to Counts Four and Seven.

The question then becomes whether such dismissal should be with or without prejudice to reprosecution.  A dismissal without prejudice permits the prosecutor to seek a new indictment within "six calendar months" of the dismissal, pursuant to 18 U.S.C. § 3288.  The Government argues that if any count of the Indictment is dismissed, it should be dismissed without prejudice because, among other things, the charged crimes are serious, the Defendant was not prejudiced, and the delay was inadvertent and not done in bad faith.  The Court notes that the Defendant concedes that the delay did not reflect bad faith on the part of the Government.

"The determination of whether to dismiss an indictment with or without prejudice is committed to the sound discretion of the district court."  Montecalvo, 861 F. Supp. 2d at 114 (citing United States v. Giambrone, 920 F.2d 176, 180 (2d Cir. 1990)).  "Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation."  Taylor, 487 U.S. 326, 334, 108 S. Ct. 2413, 101 L. Ed. 2d 197.

However, this discretion is circumscribed by clear statutory guidance.  Indeed, the Speedy Trial Act states that "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18

U.S.C. § 3162(a)(1). The Supreme Court of the United States has further directed courts to consider the prejudice suffered by the defendant as a result of the delay. See United States v. Taylor, 487 U.S. 326, 334, 108 S. Ct. 2413, 101 L. Ed. 2d 297 (1988)("[T]here is little doubt that Congress intended this factor to be relevant for a district court's consideration."); accord United States v. Wilson, 11 F.3d 346, 352 (2d Cir. 1993); United States v. Kiszewski, 877 F.2d 210, 213 (2d Cir. 1989); see also United States v. Upton, 921 F. Supp. 100, 105 (E.D.N.Y. 1995)("The third factor — the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, must, of necessity, also embrace the unexpressed factor of prejudice to the defendant."). The Court will analyze each factor in turn.

   1.   The Seriousness of the Offense

It is well-settled that "[w]hen an indictment charges a serious offense, a court is more likely to rule in favor of a dismissal without prejudice." United States v. Zedner, 96 Cr. 285 (TCP), 2006 WL 3050888, at *3, 2006 U.S. Dist. LEXIS 94971, at *7 (E.D.N.Y. Oct. 13, 2006)(citing Kiszewski, 877 F.2d at 214 and United States v. Mancuso, 302 F. Supp. 2d 23, 26 (E.D.N.Y. 2004)). In that regard, courts within this Circuit have concluded that "[t]he Section 3161(a)(1) seriousness factor ordinarily focuses solely on the charge rather than, e.g., the strength of the government's case or the likely outcome of the proceedings." Mancuso, 302 F. Supp. 2d at 26 n. 1; see Zedner, 2006 WL 6201406, at *2, 2006 U.S. Dist. LEXIS 94971, at *7– *8.

"[T]he Court has uncovered very few cases that deem a crime 'non-serious' for Speedy Trial Act purposes." Montecalvo, 861 F. Supp. 2d at 114; U.S. v. Medungo, 223 F. Supp. 184, 185 (D. Mass. 2002)("courts throughout this country are loathe to deem any crime as non-

serious" for purposes of Speedy Trial Act violations).  At the same time, while "[a]ny felony charge is serious . . . there are degrees of seriousness." Mancuso, 302 F. Supp. 2d at 26, n. 1.

Here, the two counts of the Superseding Indictment subject to dismissal – namely, Counts Four and Seven – charged the Defendant with mail fraud in violation of 18 U.S.C. 1341.  Each count carries a maximum possible sentence of 20 years.  The Court finds that, for purposes of the Speedy Trial Act, this maximum sentence weighs in favor of the seriousness of the offense.

However, the Court notes that, according to the Second Superseding Indictment, these discrete instances of mail fraud resulted in losses of $8,000 and $5,000 to the respective agencies.  These alleged losses, in the Court's view, are not, in relative terms, substantial. Compare United States v. McCrudden, 222 F. Supp. 2d 352, 355 (E.D.N.Y.2002)(finding there to be a serious offense when the indictment contained fifteen counts of mail fraud which arose from a loss of approximately $1,200,000 to investors); United States v. Alston, 699 F. Supp. 386, 387–88 (E.D.N.Y. 1988)(finding that conspiracy to steal approximately $300,000 which carried a maximum penalty of five years in prison and a $10,000 fine was a serious crime under the Speedy Trial Act).

It is also true that the alleged crimes are non-violent in nature.  However, "[the non-violent nature of an alleged crime] does not necessarily render it non-serious." Montecalvo, 861 F. Supp. 2d at 115; see United States v. Hawthorne, 705 F.2d 258, 260 (7th Cir. 1983)(finding unlawful possession of stolen government checks, punishable by five years' imprisonment, to be serious for purposes of the Speedy Trial Act); but see United States v. Caparella, 716 F.2d 976, 980 (2d Cir. 1983)("we do not consider appellant's conduct[, the felony of mail theft, a violation of 18 U.S.C. § 1709 (1976), and the misdemeanor of opening mail without authority under 18 U.S.C. § 1703(b) (1976),] a 'serious' crime, absent exacerbating circumstances such as violence,

which is not here present. Congress viewed the crime originally charged as the lowest order of felony.").

In United States v. Clark, 577 F.3d 273 (5th Cir. 2009), the defendant was charged with felony tax fraud. The Fifth Circuit quoted with approval the district court's finding that "various courts have classified nonviolent crimes involving mendacity as serious offenses for speedy trial purposes." Id. at 282 (footnote and citations omitted). Nevertheless, the non-violent nature of the crime is a factor to take into consideration and does weigh against the seriousness of the Defendant's alleged offense. See United States v. Jones, 602 F. Supp. 1045, 1050 (E.D. Pa.1985) ("I note that violence was not an element of any of the charges against defendant . . . the seriousness of defendant's alleged conduct is a neutral factor on the issue of dismissal with or without prejudice.").

In any event, seriousness alone is not determinative of the appropriate remedy to redress a violation of the Speedy Trial Act. See Giambrone, 920 F.2d at 181 (finding that the district court's decision to dismiss with prejudice was not an abuse of discretion because even though the crime was serious and hence "did not suggest a dismissal with prejudice," the judge found "that the other two factors outweighed this one and demanded dismissal.").

2. As to the Facts and Circumstances Leading to Dismissal

Keeping in mind, "[w]here the crime charged is serious, the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay," United States v. Simmons, 786 F.2d 479, 485 (2d Cir. 1986), the Court will now evaluate the facts and circumstances that led to the delay in this case and determine whether they weigh towards dismissal with prejudice.

## a. The Length of the Delay

As an initial matter, "the dominating consideration here on the seriousness of the delay is the sheer length of the period involved." United States v. Stayton, 791 F.2d 17, 21 (2d Cir. 1986). "There is no bright line rule as to whether a period of delay is substantial enough to weigh in favor of or against dismissal with prejudice." Montecalvo, 861 F. Supp. 2d at 116-117; compare United States v. Hernandez, 863 F.2d 239, 244 (2d Cir. 1988)("[S]hort delays of the kind present here do not become 'serious' violations of the Speedy Trial Act unless there is some resulting prejudice to the defendant. The fourteen-day delay here borders on being de minimis and plainly did not result in any prejudice to the defendant.") with Mancuso, 302 F. Supp. 2d at 27 (finding three-year delay warranted dismissal with prejudice) and United States v. Stayton, 791 F.2d 17 (2d Cir. 1986)(finding twenty-three month delay between voir dire and swearing of jury warranted dismissal with prejudice).

In this case, as noted above, the unexcluded passage of time spanned eight months. This delay, even if inadvertent, is not insubstantial. Under certain circumstances, this type of delay would warrant dismissal of the relevant counts of an indictment with prejudice. See United States v. Russo, 741 F.2d 1264, 1267 (11th Cir. 1984)(several months of delay in violation of the Speedy Trial Act sufficient to bar re-prosecution). In any event, regardless of whether the sheer length of this delay alone warrants dismissal of Counts Four and Seven of the Second Superseding Indictment with prejudice, this factor, at the very minimum, weighs in favor of dismissal of those counts with prejudice.

## b. The Reason for the Delay

The Court must next determine the circumstances for the substantial period of delay.

Unlike the typical example of a Speedy Trial Act violation, the parties here dispute the underlying cause of the violation. As noted above, according to the Government, the Speedy Trial Act violation resulted because the "Order of Excludable Delay" for the time period from May 18, 2011 to June 17, 2011 signed by the Defendant was not entered on the docket even though the Government forwarded the document to the duty magistrate. To the best of his recollection, the Defendant denies signing any such document. However, in the Court's view, this denial on the part of the Defendant is difficult to reconcile with the Defendant's concession that the delay did not result from bad faith on part of the Government. This is because if, as the Defendant maintains, he did not sign that "Order of Excludable Delay," either the Government, the Defendant's counsel, or some other individual "forged" the Defendant's signature. On the other hand, the Court could take the Defendant's position to be that although he may have consented to this "Order of Excludable Delay," he did not, in fact, sign that document.

Regardless, in deciding whether to dismiss Counts Four and Seven of the Second Superseding Indictment with or without prejudice, it is not clear whether the Court may, without an evidentiary hearing, resolve these factual disputes. United States v. Schreiber, 535 F. Supp. 1359, 1360 (S.D.N.Y. 1982)(recounting procedural history of the case, including the fact that prior motion to dismiss the indictment based on the Speedy Trial Act was "denied without prejudice pending a hearing at which [the Defendant']s presence was required" because resolution of the motion "turned on a number of factual disputes). In any event, the Court concludes that such an evidentiary hearing is not necessary because it would reach the same result – to permit the Government to re-prosecute Counts Four and Seven of the Second Superseding Indictment – even if the Defendant's version of events were accurate.

Without resolving the factual dispute between the parties and assigning total fault for the Speedy Trial Act violation to either, the Court nevertheless concludes that the delay, as the Defendant concedes, did not result from bad faith on the part of the Government. However, "[bad faith] is not the sole issue involved." Montecalvo, 861 F. Supp. at 111. The Court may properly take into account whether the delay was attributable to "a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices on the part of the United States Attorney's office in the district in question." Wilson, 11 F.3d at 352 (internal quotation and citations omitted). When dismissing an indictment with prejudice pursuant to the Speedy Trial Act, "the court should specifically describe the Government's conduct and find that conduct to be more than 'an isolated unwitting violation,' be it a 'truly neglectful attitude,' 'bad faith,' a 'pattern of neglect,' or other serious misconduct." United States v. Wells, 893 F.2d 535, 539 (2d Cir. 1990)(quoting Taylor, 487 U.S. at 339, 108 S. Ct. 2413).

Here, assuming the Government's version of events is true, the Court would characterize the Speedy Trial Act violation as the quintessential "isolated unwitting violation." Hernandez, 863 F.2d at 244. Indeed, under the Government's version of events, the Speedy Trial Act violation was not due to anything other than its failure to "double check," as it should have, that the "Order of Excludable Delay" for the time period from May 18, 2011 to June 17, 2011 was entered on the Docket.

At this point, the Court distinguishes an unpublished Third Circuit opinion, which went so far as to suggest that a defendant "cannot validly complain his statutory speedy trial rights were violated when his counsel requested and consented to the continuance order." United States v. Mayfield, 361 Fed. Appx. 425, 428 (3d Cir. 2010). The Court in Mayfield relied upon its

earlier decision in United States v. Fields, 39 F.3d 439, 443 (3d Cir. 1994), in which the Third

Circuit found a defendant's Speedy Trial Act arguments "disturbing because he would have [the

court] order the dismissal of his indictment based on continuances that his own attorney sought

. . ." The Court opined that "[r]ejection of the defendant's arguments might be justified on this

ground alone." Here, however, not only does the Defendant deny signing the relevant "Order of

Excludable Delay" – a denial which itself raises a factual dispute that this Court likely cannot

resolve without an evidentiary hearing – the continuance to which the Defendant allegedly

signed was never actually entered by the Court. See Hall, 2014 WL 1744773, at *2

(distinguishing Mayfield from the facts of that case). Still, if the Government's version of events

was faithful to the truth, the logic of Mayfield would remain instructive and this Court would

conclude that the consent of the Defendant to the continuance weighs against dismissal with

prejudice, although not nearly as strongly as if the continuance had actually been entered. See id.

Again, however, the Court likely cannot resolve these factual disputes without an evidentiary

hearing.

In any event, even if the Defendant did not sign or consent to the "Order of Excludable

Delay" for the time period from May 18, 2011 to June 17, 2011 – yet admittedly signed a

subsequent "Order of Excludable Delay" without raising the Speedy Trial violation – still absent

from the record is any indication or allegation of a pattern of neglect or misfeasance by the

United States Attorney's Office, or any overarching course of misconduct, let alone any

misconduct, by the prosecutor in this case. The lack of such any such allegation naturally weighs

in favor of dismissing Counts Four and Seven of the Second Superseding Indictment without

prejudice. See United States v. Sachakov, 812 F. Supp. 2d 198, 211 (E.D.N.Y. 2011)(dismissing

indictment for Speedy Trial Act violation without prejudice, in part because "[a]ll the evidence

demonstrates that the prosecution's failure to ask that certain periods be excluded from the speedy trial clock was inadvertent, not the product of bad faith or a pattern of neglect. The government has been otherwise diligent in its prosecution of the defendant. It is prepared for trial. Had the prosecution asked for an exclusion of time, whether for one of the causes listed in the Act or in the interests of justice, the court would have granted it); cf. U.S. v. Giambrone, 920 F.2d 176, 181 (2d Cir. 1990)(granting dismissal with prejudice in light of government's "extremely lax" attitude in case toward requirements of the Speedy Trial Act); Montecalvo, 861 F. Supp. 2d at 117 (dismissing indictment with prejudice, reasoning in part that "[y]ears passed without any documented effort on the part of the Government to move the case to the next stage of the criminal procedure, and this can only be properly characterized as a lackadaisical attitude towards [the Defendant]'s prosecution.").

Further, the fact that the Defendant signed the subsequent "Order of Excludable Delay" without raising the Speedy Trial objection –while irrelevant to the underlying determination of whether a Speedy Trial Act violation occurred – is relevant to shedding light on the reason for the delay. This is because a defendant's "culpable" conduct is also relevant to consideration of the "facts and circumstances" of the violation. United States v. Barro, No. 12-CR-0160 (NGG), 2014 WL 2718410, at *6 (E.D.N.Y. June 16, 2014)(citing Taylor).

With that consideration in mind, the Court notes that had the Defendant not failed to act on his Speedy Trial Act rights to the extent he did, the eight-month delay between the filing of the complaint and the Indictment would have undeniably been significantly shorter. For this reason, the Court concludes that the Defendant "let the time run without asserting his rights and proceeded to request further continuances weighs in favor of dismissal without prejudice." United States v. Tolutau, No. 2:08-CR-758 (TC), 2012 WL 28722, at *5 (D. Utah Jan. 5,

2012)(internal citation and quotation marks omitted). <u>United States v. Fountain</u>, 840 F.2d 509, 513 (7th Cir. 1988)("A defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention."), <u>cert. denied</u>, 488 U.S. 982, 109 S. Ct. 533, 102 L. Ed. 2d 564 (1988).

        c.   The Impact of Reprosecution on the Administration of the Statute and the Administration of Justice

In determining whether to dismiss an action without prejudice, the Speedy Trial Act also requires the Court, to weigh the impact of reprosecution on both the administration of the statute and the administration of justice.

The Supreme Court has stated that "[d]ismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." <u>Taylor</u>, 487 U.S. at 342, 108 S. Ct. 2413. On the other hand, the Second Circuit has noted that "a pattern of disregard" for the responsibility to adhere to the provisions of the Speedy Trial Act "has the potential for nullifying the requirements of the Act, for if the government suffers only dismissals without prejudice on motion of the defendant, it in effect gains successive [continuances]." <u>Giambrone</u>, 920 F.2d at 180–81. In this regard, "deterrence is appropriate in a case in which the Government fails to take action to move a case forward in pursuit of the goals of the Speedy Trial Act." <u>Montecalvo</u>, 861 F. Supp. at 119; <u>cf.</u> <u>United States v. Cardona–Rivera</u>, 64 F.3d 361, 364 (8th Cir. 1995)("[s]ince the government was not culpable in the delay, dismissal with prejudice would do little to deter or advance the administration of the Act.").

Furthermore, "[a] pattern of disregard for speedy trial rights is also detrimental to the administration of the criminal justice system since delays risk the loss of important evidence, and repetitive prosecutions on the same charges cause wasteful replication of effort." <u>Giambrone</u>,

902 F.2d at 181. "However, when the charged crime is a serious one, permitting the government to re-file the indictment benefits the administration of justice as a whole." United States v. Munlyn, 607 F. Supp. 2d 394, 401 (E.D.N.Y. 2009); United States v. Kiszewski, 877 F.2d 210, 213 (2d Cir. 1989)( allowing government to re-prosecute defendant on the "serious" crime of perjury "would, on balance, have a favorable impact on the administration of justice.").

Here, the Government argues that dismissal of Counts Four and Seven of the Second Superseding Indictment is an adequate remedy for what it contends is, at most, an isolated, negligent violation of the Speedy Trial Act. Again, the Court likely cannot credit the Government's version of events, namely the reason for the Speedy Trial Act violation, absent an evidentiary hearing. However, even taking the Defendant's version of events as true, there is no indication or allegation that the Government's conduct was egregious. United States v. Mora, No. 04 Cr. 00530 (LAP), 2005 WL 1354042, at *6 (S.D.N.Y. June 7, 2005)( "this factor is closely aligned with the facts that [may lead] to dismissal; the more egregious the Government's role in the violation and the more severe the delay, the more dismissal with prejudice is warranted."). Nor is there any evidence that this case is part of a pattern of disregard for speedy trial rights of defendants in this district. Accordingly, this factor weighs against the Defendant.

### d. The Prejudice to the Defendant

Finally, in evaluating the effect of reprosecution, the Court must also consider the prejudice suffered by the defendant, if any, as a result of the delay. See Taylor at 487 U.S. at 344, 108 S. Ct. 2413; United States v. Morety, 702 F. Supp. 957, 960 (E.D.N.Y. 1988)("[A]lthough prejudice to the defendant was not specifically enumerated among the factors in § 3162(a)(1), the legislative history of the Act leaves little doubt that Congress intended this factor to be relevant for a district court's consideration.")

In Taylor, the Supreme Court expounded on this concept as follows: "The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice of the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant in terms of his ability to prepare for trial. . . ." 487 U.S. at 340, 108 S. Ct. at 2421. The delay "may seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." Id. (internal quotation marks omitted). While long delays "increase the likelihood of presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial . . . short delays . . . [are not] serious violations of the Act unless there is some resulting prejudice to the defendant (citation and internal quotation marks omitted)." Hernandez, 863 F.2d at 244 (quoting Taylor).

Here, the delay between the filing of the complaint and the filing of the indictment, eight months, is more than a trifle. This fact alone presumptively establishes a degree of prejudice to the Defendant. But, crucially, that prejudice is "presumptive" and may be rebutted based on the particular facts of the case.

Indeed, "[p]rejudice is not generalized harm to a defendant as a result of the speedy trial violation, but rather the effect of that delay on the defendant's trial preparation." Barro, 2014 WL 2718410, at *8. Here, the delay does not appear to have actually prejudiced the Defendant's ability to mount his defense or that his ability to defend himself against the Indictment, and now the Second Superseding Indictment, was compromised due to the eight-month delay. Cf. Montecalvo, 861 F. Supp. at 119 (the defendant asserted that due the a "six year delay" in violation of the Speedy Trial Act, he "lost the business he had hoped to pass on to his son, as he

22

has been banned from bidding on municipal projects for the past six years while he is under indictment.").  Reviewing the relevant factors, the Defendant does not argue that he lost the availability of witnesses or evidence.

"Although one does not doubt the real anxiety of having the federal criminal charges . . . hanging over [the] Defendant, this is hardly attributable to the additional delay." Barro, 2014 WL 2718410, at *8.  To the contrary, even after the violation of the Speedy Trial Act occurred, the Defendant requested additional exclusion of time – notably, from January 27, 2012 to July 18, 2014 – while he negotiated a favorable plea agreement with the Government.  "These actions demonstrate a desire to take as much time as was necessary to arrange a plea agreement.  In sum, any harm [the] Defendant may have suffered from the speedy trial violation did not noticeably harm his trial preparation." Id.  To hold otherwise would allow a defendant to manipulate the system to his or her benefit.  It also must be noted that, according to the Second Superseding Indictment, the Defendant allegedly used the time he was purportedly negotiating a plea bargain resolution of the complaint to commit additional criminal offenses.

Under these circumstances, the Court finds that the factor of prejudice, or lack thereof in this case, weighs heavily against the Defendant.

3.  <u>Weighing the Factors Under 18 U.S.C. 3162(a)(1)</u>

In the instant case, the Court concludes that the serious nature of the criminal offenses charged, the lack of prejudice suffered by the defendant or any evidence of bad faith, or an attempt to obtain a tactical advantage, or a pattern of neglect by the prosecutors with regard to the Speedy Trial Act violation outweighs the import of the length of the delay and other relevant factors.  For this reason, the Court finds that dismissing Counts Four and Seven of the Second Superseding Indictment, but permitting re-prosecution, serves the administration of justice and

the Act.  As the Supreme Court noted in Taylor, "dismissal without prejudice is not a toothless

sanction," 487 U.S. at 342, 108 S. Ct. 2413, 101 L. Ed. 2d 297, and will require the Government

to obtain a new indictment if it decides to re-prosecute those counts.  That sanction, under the

circumstances and factors of this case, does not undermine the effective administration and

enforcement of the provisions of the Speedy Trial Act.

B.  The Balance of the Defendant's Outstanding Pre-Trial Requests

The Defendant also requests that the Government disclose, by way of a Bill of

Particulars, the identities of the particular "John Doe Agencies" and "John Doe Distilleries," as

well as the corresponding "check, email and/or wire transfer" referred to in the counts of the

Superseding Indictment, now the Second Superseding Indictment.

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of

particulars in order to identify with sufficient particularity the nature of the charge pending

against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose

a plea of double jeopardy should he be prosecuted a second time for the same offense.  "It has

become axiomatic that the function of a bill of particulars is to apprise a defendant of the

essential facts of the crime for which he has been charged." United States v. White, No. 13-CR-

255 S, 2015 WL 72183, at *3 (W.D.N.Y. Jan. 6, 2015); United States v. Salazar, 485 F.2d 1272,

127778 (2d Cir. 1973), cert. denied, 415 U.S. 985, 94 S. Ct. 1579, 39 L. Ed. 2d 882 (1974);

Wong Tai v. United States, 273 U.S. 77, 47 S. Ct. 300, 71 L. Ed. 545 (1927).

"A bill of particulars should be required only where the charges of the indictment are so

general that they do not advise the defendant of the specific acts of which he is accused." United

States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir.

1989)(mem.), cert. denied, 493 U.S. 834, 110 S. Ct. 110, 107 L. Ed. 2d 72 (1989); see also

United States v. Leonelli, 428 F. Supp. 880, 882 (S.D.N.Y. 1977).  "Whether to grant a bill of

particulars rests within the sound discretion of the district court."  United States v. Panza, 750

F.2d 1141, 1148 (2d Cir. 1984)(citing United States v. Burgin, 621 F.2d 1352, 1358–59 (5th

Cir.), cert. denied, 449 U.S. 1015, 101 S. Ct. 574, 66 L. Ed. 2d 474 (1980)); see also United

States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).  "Acquisition of evidentiary detail is not

the function of the bill of particulars."  Hemphill v. United States, 392 F.2d 45, 49 (8th Cir.

1968), cert. denied, 393 U.S. 877, 89 S. Ct. 176, 21 L. Ed. 2d 149 (1968).

In the Government's memorandum of law in opposition to the motion to dismiss, filed on

May 5, 2014, it expressed no objection to disclosing to the Defense counsel the identities of the

John Doe victims and providing the corresponding e-mails and/or items underlying the charged

counts.  The Government indicated that it would provide this information prior to or at the time

of the next status conference.  Several status conferences have since transpired in this case.

However, based on the parties' submissions, it is unclear whether the Government has adhered to

its prior willingness to honor this request.

Regardless, the Court finds that disclosure by the Government to the Defendant, within

thirty days of the date of this order, of the identities of the John Doe victims, as well as the

corresponding e-mails and/or items underlying the charged counts, is necessary to enable the

Defendant to prepare for trial and to prevent surprise.  Therefore, the Court directs the

Government to provide this information to the Defendant in such a manner, to the extent it has

not already done so.

The Court next considers the Defendant's motion for disclosure of Rule 404(b) evidence.

The Government submits that this motion should be denied at this time with leave to renew after

it has served a detailed Rule 404(b) notice and indicates that it expects to serve such notice 45 days prior to the trial.

Under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of a crime, wrong or other act is not admissible to prove a person's character, in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To be admissible, evidence of prior bad acts must be "(1) offered for a proper purpose, (2) relevant . . . (3) substantially more probative than prejudicial [and] (4) at the defendant's request, the district court should give the jury an appropriate limiting instruction." United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002)(citing Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988)); see also United States v. Walia, No. 14-CR-213 (MKB), 2014 WL 3734522, at *9 (E.D.N.Y. July 25, 2014)(quoting Downing).

Further, "Rule 404(b) of the Federal Rules of Evidence requires the Government to provide 'reasonable notice' in advance of trial of its intent to use other-act evidence." United States v. Giffen, 379 F. Supp. 2d 337, 345 (S.D.N.Y. 2004). The purpose of the notice provision is "to reduce surprise and promote early resolution" of any challenge to admissibility of the proffered evidence. Fed. R. Evid. 404(b) advisory committee note (1991). "While notice is typically provided no more than two to three weeks before trial, a longer period is appropriate [where there is an] absence of any threat to the safety of prospective witnesses and the . . . Rule 404(b) evidence [is important to] th[e] action." United States v. Nachamie, 91 F. Supp. 2d 565, 577 (S.D.N.Y. 2000)(internal citations and quotations omitted). Reasonable notice of Rule 404(b) evidence does not, however, require the Government to provide unduly early notice. See

United States v. Santos, No. 98 Cr. 736 (RWS), 1999 WL 4912, at *7 (S.D.N.Y. Jan. 5, 1999).

"Indeed, early disclosure presents a significant burden on preparation of the [G]overnment's case." Santos, 1999 WL 4912, at *7.

Accordingly, the Court directs the Government to provide notice of all Rule 404(b) material no later than forty-five days prior to the commencement of the trial, to the extent it has no already done so. Giffen, 379 F. Supp. at 345 (directing the Government to provide Rule 404(b) material no later than forty-five days prior to the start of trial).

The Defendant also seeks notice of any evidence which the Government intends to offer at the trial pursuant to Fed. R. Evid. 807, which is the residual exception to the rule against hearsay, previously contained in Federal Rule of Evidence 803(24). "To be admissible under Rule 807, the evidence must be (1) trustworthy, (2) material, (3) more probative than other available evidence, and must fulfill (4) the interests of justice and (5) notice." Annunziata v. City of New York, No. 06 CIV. 7637 (SAS), 2008 WL 2229903, at *9 (S.D.N.Y. May 28, 2008).

Here, the Government argues that this request should be denied with leave to renew when and if it serves notice pursuant to Rule 807 for the simple reason that it has not, at least as of May 5, 2014, identified any such evidence. The Government further represents that it expects to serve any such notice at least two weeks prior to the trial. Accordingly, based on the representations made by the Government, the Defendant's request for disclosure of Rule 807 evidence is denied as moot. United States v. Hill, No. 10-CR-191A (HKS), 2012 WL 1144541, at *9 (W.D.N.Y. Apr. 4, 2012)(denying similar request as moot in light of representations of the Government that it would provide any such material "in time to permit defendants a fair opportunity to prepare to meet the testimony").

Finally, the Court addresses the Defendants' request that the Government be compelled to disclose any <u>Brady</u>, <u>Giglio</u>, or <u>Bagley</u> material.  The Government represents that it is aware of its disclosure obligations under this line of cases and that it will comply with those obligations. Accordingly, a court order regarding this request is unnecessary.

## C.  CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss certain counts of the Superseding Indictment, now directed at the corresponding counts of the Second Superseding Indictment, is granted in part and denied in part.  In particular, that part of the Defendant's motion to dismiss certain counts on Speedy Trial grounds is granted to the extent that Counts Four and Seven of the Second Superseding Indictment are dismissed, but without prejudice.  The Defendant's motion to dismiss is otherwise denied.

With regard to the balance of the Defendant's outstanding pre-trial requests, the Court (1) directs the Government, within thirty days of the date of this order, to provide to the Defendant documentation containing the identities of the John Doe victims, as well as the corresponding e-mails and/or items underlying the charged counts, to the extent it has not already done so; (2) directs the Government to provide notice to the Defendant of all Rule 404(b) material no later than forty-five days before the commencement of the trial, to the extent it has not already done so; (3) denies as moot the Defendant's request for Rule 807 disclosure in light of the Government's representations regarding that type of evidence; and (4) deems unnecessary a court order regarding <u>Brady</u>, <u>Giglio</u>, or <u>Bagley</u> material.

**SO ORDERED.**
Dated: Central Islip, New York
January 23, 2015


       *Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge