UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,                     **MEMORANDUM OF**
                                                            **DECISION AND ORDER**
      -against-                                  12-cr-0040(ADS)

GILBERT SOLNIN, also known as
      "Gil Solnin" and "Gil Solomon,"

                Defendant.
----------------------------------------------------------------x

**APPEARANCES:**

**OFFICE OF THE UNITED STATES ATTORNEY**
   **FOR THE EASTERN DISTRICT OF NEW YORK**
*Attorneys for the Government*
610 Federal Plaza
Central Islip, New York 11722
      By:   Allen Lee Bode **and**
               Karen L. Koniuszy, Assistant United States Attorneys

**TERRENCE P. BUCKLEY, ESQ.**
*Attorney for the Defendant Gilbert Solnin*
356 Veterans Memorial Highway, Suite 8N
Commack, NY 11725

**SPATT, District Judge:**

      Presently before the Court is a motion by the Defendant Gilbert Solnin ("Solnin" or the "Defendant") to dismiss the operative criminal indictment on the ground that the Government violated his right to privileged communications with his attorneys.

      For the reasons that follow, Solnin's motion to dismiss is denied.

## I. Background

The underlying facts and circumstances of this case were discussed at length in this Court's January 23, 2015 Decision and Order, see Docket Entry ("DE") [92], and, therefore, familiarity with them is presumed. However, the Court now discusses the following background information insofar as it is relevant to the instant motion.

### A. The Initial Criminal Complaint and the Defendant's Arrest

On February 12, 2011, United States Postal Inspector Eric Oram ("SA Oram") executed an affidavit in support of an arrest warrant relating to the Defendant (the "Complaint"). The following facts are drawn from the Complaint.

In his capacity as a member of the United States Postal Inspection Service's ("USPIS") Queens/Long Island Multi-Functional Team, SA Oram investigated an alleged fraudulent scheme that was devised and carried out by Solnin. In particular, SA Oram alleged that, between 2007 and 2011, Solnin, a resident of Plainview, New York, had defrauded numerous marketing and advertising agencies throughout the United States. Allegedly, Solnin held himself out to be a manager or operator for various business ventures seeking advertising and marketing assistance. In this regard, Solnin allegedly would contact representatives of marketing or advertising agencies by e-mail; he would indicate that he was involved in the formation of a new business venture and would suggest that the new venture required marketing and advertising services. It is alleged that Solnin was involved in no such venture at the times that he made these overtures. Nevertheless, he

would solicit monthly retainers from the agencies of between $3,500 and $8,000 for approximately two or three months. SA Oram alleges that Solnin received these monies by United States Mail, private and commercial interstate carriers, and wire transfers. Ultimately, Solnin either ceased communications altogether with the agencies or explained "that accidents and/or illnesses ha[d] befallen him." In each instance, the supposed venture for which the retainer was solicited never came to pass.

The Complaint outlines the experiences of two alleged victims, whose identities are known to SA Oram, but who are referred to in the Complaint only as "John Does." For example, in or about September 2008, Solnin allegedly solicited an individual referred to as John Doe #1, who is the Chief Executive Officer of Doe Agency #1. Allegedly, over the course of several discussions by telephone, e-mail, and in person, Solnin represented that he had contracts with three beverage companies. He also represented that he was coordinating with a private equity firm to raise venture capital for the project. Eventually, Solnin executed an agreement with Doe Agency #1, which stated that Solnin was "the United States Commercial Director" of each of the three beverage companies. He further represented that Doe Agency #1 would be the exclusive agency to represent the beverage companies' venture, and that the deal would be closing in January 2009. Allegedly, based on these representations, between October 2008 and January 2009, Solnin solicited and received three payments of $8,000 each, two of which were sent by United States Mail to his Plainview, New York address.

On January 12, 2009, Solnin allegedly sent an e-mail to John Doe #1, stating that he had been involved in a car accident in Denver; lost his phone; and was having dizzy spells. In subsequent e-mails between January and April 2009, Solnin allegedly asserted to John Doe #1 that the closing was delayed and that he had been diagnosed with Multiple Sclerosis following the accident. Solnin eventually ceased all communications with John Doe #1 and the closing never occurred.

On another occasion, in or about April 2009, Solnin allegedly solicited an individual referred to as John Doe #2, who is the managing partner of Doe Agency #2. He repeated representations to John Doe #2 that were substantially similar to those he made to John Doe #1, namely, that he had a contract with beverage companies; he was coordinating with a private equity firm to capitalize a business venture; that he was the United States Commercial Director for the beverage companies; and that a deal was scheduled to close in July 2009. Again, allegedly, Solnin solicited and received two $5,000 payments from Doe Agency #2 between April and June 2009, one of which was sent via private commercial interstate carrier to his Plainview address.

On July 20, 2009, Solnin allegedly sent an e-mail to John Doe #2, stating that he had been in a car accident; that he had been diagnosed with Multiple Sclerosis; and that there were unspecified problems with the beverage companies' business venture. Allegedly, John Doe #2 requested a refund of the $10,000 paid to Solnin, but Solnin refused.

SA Oram stated that he spoke to representatives of the beverage companies with which Solnin alleged to have been in business. Apparently, these representatives informed SA Oram that Solnin was not authorized to represent them in any capacity and that they were not involved in any of the projects that Solnin described to the Doe Agencies. SA Oram further stated that a representative of the private equity firm identified by Solnin denied ever raising capital for any project involving Solnin.

On February 11, 2011, United States Magistrate Judge William D. Wall issued a warrant for Solnin's arrest.

On February 16, 2011, Solnin was arrested.

## B. The Initial Indictment

On February 16, 2011, with counsel, Solnin made an initial appearance before United States Magistrate Judge E. Thomas Boyle. Solnin waived a preliminary hearing and was released on a $250,000 secured bond.

On July 15, 2011, the Government moved to dismiss the Complaint without prejudice. United States Magistrate Judge Arlene R. Lindsay "So Ordered" the dismissal.

On January 12, 2012, a Grand Jury returned an Indictment charging Solnin with eight counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 3551 *et seq.* and six counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 3551 *et seq.*, arising from the scheme outlined above. In particular, the Indictment included counts of

5

mail fraud relating to Doe Agencies #1 and #2, as well as counts involving criminal offenses as to twelve additional victim agencies.

## C. The Search Warrant of Solnin's Residence

On January 24, 2012, Magistrate Judge Wall issued two search warrants. The first was directed at several e-mail accounts allegedly maintained by Solnin. The second, which was directed at Solnin's residence located at 16 Lillian Lane in Plainview, New York, sought records, data and correspondence constituting evidence, fruits and instrumentalities of the charged criminal acts, including the following property and data:

> [C]omputers, central processing units, external and internal drives, external and internal digital storage equipment or media, computer software, computerized digital data storage devices, including data stored on hard disks, floppy disks, or CD/DVD Disks, computerized printouts or computer programs, computer or data processing software or data, and any other items which could contain or be used to transmit or store any digital records, documents, and materials described above.

See Attachment "A" to Search and Seizure Warrant, Case No. 12-mj-0076.

On January 27, 2012, federal agents executed the seizure warrant described above, and confiscated various items, including: (i) a Compaq laptop computer (the "Laptop"); (ii) an external data storage device described in the relevant inventory as a "thumb drive"; and (iii) another storage device described in the inventory only by a fourteen-digit alphanumerical serial number.

On that same day, with counsel, Solnin appeared before Magistrate Judge Wall and pleaded not guilty to the fourteen-count indictment.

6

**D. The Superseding Indictment**

On November 19, 2013, another Grand Jury returned a Superseding Indictment charging Solnin with one additional count of mail fraud and four additional counts of wire fraud. The additional counts arise from an alleged second scheme, in which Solnin targeted beverage distilleries in a manner similar to the scheme involving the marketing and advertising agencies. In particular, Solnin is alleged to have made false representations to various distilleries concerning his ability to secure placement of their products through purported distributors located in New York State. Similar to the first scheme, the alleged aim of the second scheme was to solicit advance commission fees from the distilleries in amounts between $1,000 and $4,000 for services that were never to be rendered. Such payments are alleged to have been sent to Solnin by United States Mail, private commercial carriers, and electronic wire transfers.

On November 22, 2013, with counsel, Solnin appeared before Magistrate Judge Wall and pleaded not guilty to the Superseding Indictment.

**E. Solnin's First Motion to Dismiss and the Second Superseding Indictment**

On March 27, 2014, Solnin filed a motion, pursuant to 18 U.S.C. § 3162(a)(1), seeking to dismiss certain counts of the Superseding Indictment on the ground that the Government failed to comply with the time limit required by the Speedy Trial Act of 1974, 18 U.S.C. § 3161(b). Solnin also sought an order: (i) directing the Government to supply a Bill of Particulars identifying the John Doe Agencies and the John Doe Distilleries referred to in the Superseding Indictment; (ii) directing

7

the Government to produce copies of the checks, e-mails, and/or wire transfer confirmations referred to in each of the individual counts of the Superseding Indictment; (iii) directing the Government to provide information pursuant to Rules 404(b) and 807 of the Federal Rule of Evidence; and (iv) directing the Government to produce information pursuant to the Supreme Court's rulings in Brady v. Maryland, Giglio v. United States, and United States v. Bagley.

On October 23, 2014, while Solnin's motion to dismiss was pending, another Grand Jury returned a Second Superseding Indictment charging Solnin with two additional counts of wire fraud and one count of making a false statement in violation of 18 U.S.C. §§ 1001(a)(2) and 3551 *et seq*.

On November 14, 2014, with counsel, Solnin appeared before this Court and pleaded not guilty to the Second Superseding Indictment.

On January 23, 2015, this Court issued a Decision and Order granting in part and denying in part Solnin's March 27, 2014 motion to dismiss. Initially, the Court noted that, in light of the Second Superseding Indictment, which had been returned during the pendency of the motion, Solnin had consented to the Court treating the motion as directed to the corresponding counts of the Second Superseding Indictment. In addition, the Court found that a violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., had occurred and, as a result, dismissed without prejudice Counts Four and Seven of the Second Superseding Indictment, which were based on the alleged criminal acts contained in the original Complaint, namely, the frauds allegedly perpetrated against Doe Agencies #1 and #2. The Court also granted

Solnin's requests for a bill of particulars and for material pursuant to Fed. R. Evid. 404(b). The Court denied as moot Solnin's request for material pursuant to Fed. R. Evid. 807 and found that an order compelling the Government to produce Brady, Giglio, or Bagley material was unnecessary at that time.

**F.    The Third Superseding Indictment**

On March 19, 2015, a Grand Jury returned a Third Superseding Indictment, which was materially indistinguishable from the Second Superseding Indictment and re-charged Solnin with the counts of Mail Fraud that were previously dismissed by the Court without prejudice.

On April 10, 2015, with counsel, Solnin appeared before this Court and pleaded not guilty to the Third Superseding Indictment.

**G.    The Present Motion**

On August 31, 2015, Solnin filed a motion to dismiss the Third Superseding Indictment on the ground that, in the course of executing the seizure warrant described above, the Government allegedly accessed documents on Solnin's computer that were protected by the attorney-client privilege. In particular, Solnin asserts that, on January 27, 2012, the Government seized the Laptop and a "White External Hard Drive." The Court notes that Solnin does not specify which of the items identified on the relevant seizure warrant inventory is the subject "White External Drive" – namely, the external data storage device described as a "thumb drive" or the storage device described only by a fourteen-digit alphanumerical serial

number. In any event, the Court will refer to the White External Hard Drive simply as the "Hard Drive."

Solnin further asserts that approximately two years later, in January 2014, he requested that the Government reproduce all of the files from the Laptop and the Hard Drive for his use in preparing for trial. Solnin asserts that the digital files contained in the Laptop and the Hard Drive had been organized in subfolders, each of which was labeled. Apparently, Solnin expected that the Government would reproduce these files in the same manner that they were previously maintained, namely, organized in their respectively labeled subfolders.

On or about April 1, 2014, the Government complied with Solnin's request and provided him with a digital copy of all of the materials contained in the Laptop and the Hard Drive. However, according to Solnin, the digital files that were copied from his Laptop were not reproduced in their respectively labeled subfolders. Rather, all of the files were provided in one comprehensive alphabetical list.

Solnin asserts that this presents a problem because some of the subfolders contained documents that are protected by the attorney-client privilege, and their subfolders were labeled as such. For example, one of the subfolders was labeled "Gil LAWYER file." According to Solnin, this subfolder contained "confidential communications" between him and counsel, including "information provided to his attorneys via e-mail and in person including defense strategy for both the charges with advertising agencies and beverage companies that would not be generally

known from public information, from other files, or from the complaints." See Def. Ltr. Mot. at 4.

In this regard, Solnin alleges that, because the files that were copied from his Laptop were not reproduced in their original subfolders, "someone reviewing all these files would have no way of knowing that they were privileged files." Def. Ltr. Mot. at 5. He further asserts that the Government "eliminated" the subfolders, thereby "exposing" documents that contain his trial strategy. However, Solnin does not specifically assert that the Government viewed any of these privileged documents. Nor does he point to any evidence that might plausibly suggest such conduct by the Government. Instead, Solnin infers that the Government consolidated his various digital files into a single list and reviewed all of them, without regard for whether they contained privileged content or originated in a subfolder that signaled potentially privileged content.

Solnin states that "[i]f the Government intruded into the lawyer folder on the [Laptop], it constituted a per se violation of his sixth amendment right to counsel and a gross breach of the confidentiality of attorney-client privilege." Def. Ltr. Mot. at 5. Further, in his moving papers, Solnin states that "[s]everal courts have held that the Government's intrusion into privileged attorney-client communications constitutes an interference with the Defendant's right to assistance of counsel." However, his legal memorandum does not cite a single case to support this contention. Solnin also states in his moving papers that "[c]ourts have held that the defendant is not required to prove that he was prejudiced by the Governmental

11

intrusion, and that prejudice may be presumed regardless of whether it is intentional or unintentional." However, again, Solnin's legal memorandum does not cite to a single supporting case for this proposition. Nevertheless, Solnin contends that these allegations warrant dismissal of the Third Superseding Indictment.

In opposition, the Government asserts that it engaged a "Privilege Review Team," also known as a "Taint Review Team" to copy the material. The Government also submitted a letter from Assistant United States Attorney ("AUSA") Michael P. Canty, who wrote on behalf of the Taint Review Team that, apparently, was charged with reviewing the material seized from Solnin in order to identify potentially privileged content. Canty states that a "forensic tool kit" was used to reproduce the material contained in the Laptop, which does not necessarily organize the copied material in the same manner as it originally appears. Canty states that the configuration of the reproduced files bears no relationship to whether those files were reviewed. In fact, in its opposition papers, the Government asserts that "[t]he trial team has not seen any communications between Solnin and [his] attorneys at all, let alone communications which would expose a defense tactic or strategy." Gov. Ltr. Opp. at 4.

## H. The October 9, 2015 Oral Argument and Solnin's Reply

On October 9, 2015, the parties appeared before this Court for the purpose of providing oral argument in support of their respective positions on this motion.

In addition, over the Government's objection, the Court granted an oral application by defense counsel for an opportunity to submit a written reply in further support of his motion to dismiss.

On October 21, 2015, the Defendant submitted a reply, largely reiterating the same arguments that he advanced in his moving papers months earlier. In particular, Solnin asserts that computer hard drives are analogous to physical file cabinets. Thus, similar to paper files that are hidden from public view inside a file cabinet, so too are documents kept in digital subfolders entitled to a reasonable expectation of privacy. In this regard, Solnin further asserts that "courts expect the [G]overnment to devise a strategy and plan for protecting intrusion into such folders." However, according to Solnin, the Government in this case "chose not to have any such strategy or plan to make sure no breach of privilege occurred."

Responding to the Government's statements regarding the use of a "taint team," Solnin asserts that other courts have "often . . . questioned" or "outright rejected" the use of such teams. He states that "a taint team member may innocently, deliberately, or inadvertently disclose some piece of information that may lead directly or indirectly to a disclosure of evidence." Significantly, the Court notes that Solnin's reply does not assert that any disclosure, innocent or otherwise, actually occurred in this case.

Further, on October 22, 2015, the Court received a three-page document from defense counsel, which was hand-delivered and does not appear to have been filed with the Clerk of the Court. The document contains a brief handwritten note from

13

defense counsel, which reads as follows: "Supplement to Solnin motion from Mr. Solnin, submitted at his request."  The document is clearly a substantive communication from the Defendant, himself, to his attorney regarding the instant motion.

In particular, the document contains descriptions of case law that, apparently, Solnin, a non-lawyer, researched himself; his analysis of those cases to the facts of this case; and what appears to be edits and proposed material revisions to the reply that was filed by his counsel the day before.  The document does not contain any factual assertions.

Although not specifically authorized; and although the Defendant is represented by counsel in this case; in its discretion, the Court will take this supposed legal memorandum into consideration and accord it the appropriate weight in adjudicating this motion.  The Court will refer to this document as the "Defendant's Supplement."

## II.    Discussion

"In determining whether there has been an intrusion into the attorney-client relationship in violation of a defendant's Sixth Amendment rights, courts have examined the following factors:  (1) whether there was an intentional intrusion into the attorney-client relationship to gather confidential privileged information, or whether the intrusion was inadvertent; (2) whether evidence to be used at trial was obtained directly or indirectly by the government intrusion; (3) whether the prosecution obtained details of the defendant's trial preparation or defense strategy;

and (4) whether the government, directly or indirectly, used or will use evidence obtained as a result of the intrusion to the substantial detriment of the defendant." United States v. Pearson, 04-cr-340, 2006 U.S. Dist. LEXIS 32982, at *26 (N.D.N.Y. May 24, 2006) (citing Weatherford v. Bursey, 429 U.S. 545, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977)), remanded on other grounds, 570 F.3d 480 (2d Cir. 2009).

"The Second Circuit has held that 'unless the conduct of the Government has . . . been . . . manifestly and avowedly corrupt, a defendant must show prejudice to his case resulting from the intentional invasion of the attorney-client privilege.'" Id. (quoting United States v. Schwimmer, 924 F.2d 443, 447 (2d Cir. 1991), cert. denied, 502 U.S. 810, 112 S. Ct. 55, 116 L. Ed. 2d 31 (1991)); see United States v. Hsia, 81 F. Supp. 2d 7, 17 (D.D.C. 2000) (noting, in the context of the four-factor test articulated above, that "the defendant would be required to show proof by at least a preponderance of the evidence and that 'there must be a substantial demonstration of prejudice before an indictment can be dismissed'" (quoting United States v. Neill, 952 F. Supp. 834, 840 (D.D.C. 1997))).

In this case, there is no evidence of a Government intrusion into Solnin's attorney-client communications. Solnin does not identify any particular privileged material that he contends was improperly obtained by the Government; he does not assert any way in which the information was allegedly used either for the Government's benefit or to his detriment; he does not assert any non-conclusory facts to suggest that any discernible aspects of his trial strategy were exposed to the

Government; and he does not assert any identifiable prejudice that he has or will suffer as a result of what has occurred here.

In fact, the Court would be remiss not to emphasize that Solnin does not actually assert that the Government viewed any privileged material. Instead, he states only that, when the Government turned over a copy of his digital files in discovery, they were not organized in their original subfolders. From this bare assertion, Solnin concludes, and invites the Court to conclude, that the Government intentionally removed the files from their subfolders; deleted the subfolders to mask whether the files contained privileged information; reviewed each and every file; and used or will use privileged information extracted from those files to his substantial detriment.

Solnin asks the Court to accept this series of events without any evidence whatsoever beyond the simple rearrangement of his computer files. He also urges this despite the statements of Canty that a Taint Review Team independently performed a privilege review of the information seized from the Laptop and the Hard Drive; that, in the process of copying the files, the Government's forensic software produced the files intact, although in a different configuration than they were originally kept; and, of prime importance, that the reconfiguration does not signify that those files were ever substantively reviewed. Canty unequivocally stated that no member of the trial team prosecuting this case accessed any privileged information. Under these circumstances, there is no basis for concluding that the Government intruded into Solnin's attorney-client communications. As a

result, the Court finds it unnecessary to evaluate whether, under the four-part test outlined above, the alleged intrusion reached constitutional dimensions.

Further, even assuming the Court were to find a violation of Solnin's Sixth Amendment rights, "there is no per se rule requiring dismissal of the indictment. '[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.'" Pearson, 2006 U.S. Dist. LEXIS 32982, at *30 (quoting United States v. Morrison, 449 U.S. 361, 364-65, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981)). In this regard the "[m]ere exposure of the government to privileged materials is insufficient to warrant" dismissal; rather, "it must be shown at the very least that the confidential information was used for the benefit of the government or the detriment of the defendant." Id. at *30-*31 (internal citations omitted).

In this case, Solnin does not assert any non-conclusory facts by which it could be considered plausible that the Government extracted privileged information from his Laptop and Hard Drive and used it, or was prepared to use it, against him. His bare assertions of a "gross breach of the confidentiality of attorney-client privilege," without any supporting facts or citation to controlling legal authority, are speculative and find no evidentiary support in the record. This is particularly so in light of the statements contained in the Government's opposition brief, which are not contradicted by Solnin, that the Government possesses substantial evidence beyond what was recovered from the Laptop and Hard Drive, including a confession by Solnin to arresting investigators.

17

In reaching this conclusion, the Court will now discuss the cases in the Defendant's Supplement, namely, United States v. Costanzo, 740 F.2d 251 (3d Cir. 1984), cert. denied, 472 U.S. 1017, 105 S. Ct. 3477, 87 L. Ed. 2d 613 (1985); United States v. Levy, 577 F.2d 200 (3d Cir. 1978); and United States v. Neill, 952 F. Supp. 834 (D.D.C. 1997). Solnin relies upon these cases for the proposition that the Government's use of a "taint team" to review potentially privileged documents constitutes a per se Government intrusion; that the resulting prejudice to a criminal defendant is presumed; and that the burden rests with the Government to overcome that presumption. See Solnin Supplement at 2-3 (unnumbered).

These cases, which the Court notes are not from the Second Circuit and have less binding power, do not warrant the extreme remedy of dismissing the indictment in this case. Both Costanzo and Levy involved alleged disclosures of the defendant's privileged information by Government informants, and are thus inapplicable to the facts in this case. In this regard, there is nothing in the record to suggest that a Government informer was involved in obtaining Solnin's allegedly privileged material, and the defense has not supplied any substantial basis for expanding the law relating to such informants to the facts and circumstances of this case.

With respect to Neill, Solnin focuses on the following relevant passage:

> While the parties dispute whether courts have sanctioned the Department of Justice's "taint team" procedures, it is clear that the government's affirmative decision to invoke these procedures constitutes a *per se* intentional intrusion. Where the government chooses to take matters into its own hands rather than using the more traditional alternatives of submitting disputed documents under seal

> for *in camera* review by a neutral and detached magistrate or by court-appointed special masters, it bears the burden to rebut the presumption that tainted material was provided to the prosecution team.

Neill, 952 F. Supp. at 840-41 (internal citations omitted).

However, to the extent such a presumption of prejudice with regard to the taint team would be recognized in this Circuit – something Solnin has not established – the Neill court specifically suggested that the Government could satisfactorily rebut the presumption that tainted material was provided by the taint team to the prosecution team by, for example, "showing . . . procedures in place to prevent such intragovernmental communications." Id. at 841 (citation omitted)). In this regard, the facts of Neill reflect a privilege review process substantially similar to that outlined by the AUSAs in their supporting materials and at oral argument. Thus, the Court is satisfied that, similar to Neill, the Government in this case carried its burden to rebut any presumption of harm.

In reaching this conclusion, the Court notes that, at oral argument, Michael Canty, an AUSA assigned to the taint team, appeared before the Court. In an apparent effort to allay Solnin's concerns as to the sufficiency of the privilege review procedure, being the subject matter of his instant motion, AUSA Canty offered to submit to questioning by defense counsel and provide testimony relating to any aspects of the process that Solnin finds objectionable. On the record, defense counsel represented that it would not be necessary to elicit any such testimony. Accordingly, in the Court's view, Solnin may not now be heard to complain that those procedures were inadequate as a matter of law.

In light of the foregoing, the Court finds that Solnin has not demonstrated any Governmental intrusion into his attorney-client relationship, let alone one with constitutional implications. Accordingly, Solnin's motion to dismiss the Third Superseding Indictment on the ground that there was a violation of his right to have privileged communications with his attorney is denied.

**SO ORDERED**

Dated:  Central Islip, New York
    October 23, 2015

               */s/ Arthur D. Spatt*
               ARTHUR D. SPATT
               United States District Judge